UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH **xxstefan1@gmail.com** AND **i.runge25@gmail.com** THAT IS STORED AT PREMISES CONTROLLED BY GOOGLE INC. | MAG. No. ____________________ |
|---|---|

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Dramous K. Lofton, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a search warrant for information associated with a certain account that is stored at premises controlled by Google Inc., a provider of e-mail and other internet-related services headquartered at 1600 Amphitheatre Parkway in Mountain View, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), 2703(c)(1)(A), and 3512(a), to require Google Inc. to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B, using the procedures described in Section III of Attachment B.

2. The information requested in this search warrant is being sought pursuant to a request for assistance ("Request") from the Federal Office of Justice in Bonn, Germany, transmitted to Washington, D.C., on or about November 20, 2017. Authorities in Germany are investigating manslaughter offenses in violation of the criminal laws of Germany, specifically,

sections 25 and 212 of the Criminal Code of Germany. Copies of the applicable laws are appended to this affidavit.

3. The Request is made pursuant to the Treaty Between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters, U.S.-F.R.G., Oct. 14, 2003, S. TREATY DOC. NO. 108-27 (2004), as supplemented by the Supplementary Treaty to the Treaty Between the United States of America and the Federal Republic of Germany on Mutual Legal Assistance in Criminal Matters, U.S.-F.R.G., April 18, 2006, S. TREATY DOC. NO. 109-13 (2006) (hereinafter, the "Treaty"). Under the Treaty, the United States is obligated to render assistance in response to this Request.

4. I am a Special Agent with the Federal Bureau of Investigation, and have been since April of 2011. I am currently assigned to the International Operations Division, Mutual Legal Assistance Treaty Unit. My current duties include responding to request from foreign governments pursuant to Mutual Legal Assistance Treaties, including serving as the affiant on search warrants affidavits, serving search warrants, and reviewing the data received for the relevance in compliance with parameters of the search warrants. In my past assignments I have assisted in investigations of federal criminal violations related to high technology or cyber-crimes. I have gained experience through various trainings and conferences. I have also worked violent crime and major offender matters, giving me extensive experience in the execution of search warrants and analysis of collected evidence. I was previously employed for seven years with the West Haven Police Department, West Haven, Connecticut. There I also drafted and executed search warrants.

5. The facts set forth in this affidavit are based upon information conveyed to the United States via a request made pursuant to the Treaty by authorities in Germany and upon my

training and experience. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

6. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of the criminal laws of the Germany have been committed by Stefan Kurt Bergmann ("Bergmann"). There is also probable cause to search the information described in Attachment A for evidence, instrumentalities, contraband or fruits of these crimes further described in Attachment B.

**JURISDICTION**

7. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. *See* 18 U.S.C. § 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court "is acting on a request for foreign assistance pursuant to [18 U.S.C.] section 3512 . . . ." 18 U.S.C. § 2711(3)(A)(iii); *see also* 18 U.S.C. § 3512(a)(2)(B) (court may issue "a warrant or order for contents of stored wire or electronic communications or for records related thereto, as provided under section 2703"), § 3512(c)(3) ("application for execution of a request from a foreign authority under this section may be filed . . . in the District of Columbia").

8. This application to execute the Germany's request has been approved and duly authorized by an appropriate official of the Department of Justice, through the Office of International Affairs ("OIA").[1] *See* 18 U.S.C. § 3512(a). An OIA attorney has reviewed the

[1] The Attorney General, through regulations and Department of Justice directives, has delegated to the Office of International Affairs the authority to serve as the "Central Authority" under treaties and executive agreements between the United States and other countries pertaining to mutual assistance in

request, confirmed that it was submitted by authorities in Germany in connection with a criminal investigation and/or prosecution, and authorized the undersigned to file this application.

**PROBABLE CAUSE**

9. According to German authorities, they are investigating the disappearance and possible death of the victim. She was last seen on October 25, 2017, by her ex-boyfriend, Stefan Bergmann ("Bergmann"). Bergmann was questioned on November 3, 2017.

10. According to Bergmann, he and the victim had been in a relationship, but she had ended it in mid-July 2017. He asked her for an opportunity to discuss the relationship so the victim met Bergmann at his apartment on October 25, 2017. Bergmann claimed that the victim was not feeling well so he drove her home. He asserted that he dropped her off 100 meters from her home shortly after 11:00 P.M. on October 25, 2017. He explained that she wanted to walk the last bit to get some fresh air.

11. However, based on the investigation authorities suspect that Bergmann is involved in the victim's disappearance. The victim left her purse and her dog in the car with Bergmann when she exited. Witnesses who knew the victim reported that the victim would never have left her dog behind nor would she have gone home alone in the dark. Witnesses further report that Bergmann had not taken the break up well, particularly as the two had planned on opening a gas station together. Bergmann also allegedly has violent tendencies.

12. While questioning Bergmann on November 3, 2017, German authorities also examined his phone. The analysis showed that Bergmann used the Google account xxstefan1@gmail.com. Authorities further determined that Bergmann had used Google Location

---

criminal matters. *See* 28 C.F.R. §§ 0.64-1, 0.64-4, and Appendix to Subpart K, Directive Nos. 81A and 81B (2015).

History but that he had manually shut it off on October 25, 2017, at 11:08:30 PM – minutes after Bergmann reportedly dropped the victim off.

13. German authorities have not yet recovered the victim's phone. However, they are confident that she had it with her because she was sending messages shortly before arriving at Bergmann's apartment. Moreover, at around the time she would have arrived at Bergmann's on the 25th of October, her phone went off the mobile network – German authorities presume this is because she switched to Wifi at Bergmann's home.

14. Based on the victim's phone number, Google was able to identify her Google account as i.runge25@gmail.com. Additional subscriber information for the account indicated that the victim used a number of Google services including Android, Location History, and Web & App Activity. The last login Google provided was on October 22, 2017. Information from the telecommunications provider showed that the victim's mobile phone was logged into the network at least until October 26, 2017.

15. Based on the above information and other available evidence, German authorities have reason to believe that records for the Google account associated with xxstefan1@gmail.com and i.runge25@gmail.com (including records pertaining to use of Android, Web & App Activity, and Location History) will contain evidence of Bergmann and the victim's respective locations and activities leading up to and shortly after the victim's disappearance.

**BACKGROUND CONCERNING GOOGLE**

16. In my training and experience, I have learned that Google Inc. provides a variety of on-line services, including e-mail access, to the public. Google Inc. allows subscribers to obtain e-mail accounts at the domain name gmail.com, like the e-mail account(s) listed in Attachment A. Subscribers obtain an account by registering with Google Inc. During the

registration process, Google Inc. asks subscribers to provide basic personal information. Therefore, the computers of Google Inc. are likely to contain stored electronic communications (including retrieved and unretrieved e-mail for Google Inc. subscribers) and information concerning subscribers and their use of Google Inc. services, such as account access information, e-mail transaction information, and account application information. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

17. A Google Inc. subscriber can also store with the provider files in addition to e-mails, such as address books, contact or buddy lists, calendar data, pictures (other than ones attached to e-mails), and other files, on servers maintained and/or owned by Google Inc. In my training and experience, evidence of who was using an e-mail account may be found in address books, contact or buddy lists, e-mail in the account, and attachments to e-mails, including pictures and files.

18. The subscriber of a Google, Inc. e-mail account also can sign-up to utilize additional services or functionalities offered by Google, including Google Plus (also referred to as "Google+"), Google Photos, Google Hangouts, Google Chrome Sync, Web & App Activity, Location History, and YouTube.

19. Google Plus is a social networking platform that interfaces with or is otherwise linked to the other Google-based services utilized by a particular Google Inc. subscriber. A Google Plus user will have a publicly visible profile that displays status updates posted by the user and certain other user-populated information about the user, including a "tagline" describing the user, a profile photo, background photo, cover photo, and other details about the user, including the user's birthday, previous work and school history, interests, and places lived.

Google Plus users are able to communicate with, "follow" the profiles and activities of, comment on posts made by, and share information posted by, other Google Plus users. A Google Plus user also can elect to display on his or her Google Plus profile links to (a) the user's other social networking profiles or accounts (including those that are non-Google-based), (b) websites for which the user is a contributing author, and (c) links to any other websites that are recommended by the user.

20. Google Hangouts ("Hangouts") allows users to communicate in a variety of ways including by text, voice, and video. A Hangouts user can, among other things, participate in group conversations, share photos, maps, and other media with other users of Hangouts, and place calls to landline, mobile, and internet-based telephone numbers.

21. Google Photos ("Photos") is a digital photograph and video storage area to which a user can upload photos and videos from any platform and categorized these photos and videos into albums, which can then be shared with other Google users.

22. If enabled by the user, Google Chrome Sync enables a user to sync bookmarks, history, passwords, and other settings across various devices when the user is signed into Chrome on more than one device.

23. If enabled by the user, Location History will cause the user's devices to report the approximate geolocation of such devices back to Google over time. This location data is then supplied to any applications (whether Google-based or otherwise) operating on the devices that utilize user location information in order to enhance the applications' services.

24. If enabled by the user, Web & App Activity will save information such as searches in Google products like Google's search engine and Maps. Google will also save information on the device like recent apps or contact names that the user searches for.

25. In my training and experience, internet services and e-mail providers generally ask their subscribers to provide certain personal identifying information when registering for an e-mail account. Such information can include the subscriber's full name, physical address, telephone numbers and other identifiers, alternative e-mail addresses, and, for paying subscribers, means and source of payment (including any credit or bank account number). In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users. Based on my training and experience, I know that even if subscribers insert false information to conceal their identity, this information often provides clues to their identity, location, or illicit activities.

26. In my training and experience, e-mail providers typically retain certain transactional information about the creation and use of each account on their systems. This information can include the date on which the account was created, the length of service, records of log-in (*i.e.*, session) times and durations, the types of service utilized, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via the provider's website), and other log files that reflect usage of the account. In addition, e-mail providers often have records of the Internet Protocol address ("IP address") used to register the account and the IP addresses associated with particular log-ins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the e-mail account.

27. In my training and experience, in some cases, e-mail account users will communicate directly with an e-mail service provider about issues relating to the account, such as technical problems, billing inquiries, or complaints from other users. E-mail providers

typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications. In my training and experience, such information may constitute evidence of the crimes under investigation because the information can be used to identify the account's user or users.

28. As explained herein, information stored in connection with an e-mail account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the investigating officials to establish and prove each offense-element, or, alternatively, to exclude the innocent from further suspicion. From my training and experience, I know that the information stored in connection with an e-mail account can indicate who has used or controlled the account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, e-mail communications, contact lists, and images sent (and the data associated with the foregoing, such as date and time) may indicate who used or controlled the account at a relevant time. Further, information maintained by the e-mail provider can show how and when the account was accessed or used. For example, e-mail providers typically log the IP addresses from which users access the e-mail account along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the e-mail account access and use relating to the criminal activity under investigation. This geographic and timeline information may tend to either inculpate or exculpate the account owner. Additionally, information stored at the user's account may further indicate the geographic location of the account user at a particular time (*e.g.*, location information integrated into an image or video sent via e-mail). Finally, stored electronic data

may provide relevant insight into the e-mail account owner's state of mind as it relates to the offense under investigation. For example, information in the e-mail account may indicate the owner's motive and intent to commit a crime (*e.g.*, communications relating to the crime), or consciousness of guilt (*e.g.*, deleting communications in an effort to conceal them from law enforcement).

## CONCLUSION

29. Based on the forgoing, I request that the Court issue the proposed search warrant. Because the warrant will be served on Google Inc. who will then compile the requested records at a time convenient to it, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

______________________________
Dramous K. Lofton
Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me on ____________________________, 2017

________________________________________

UNITED STATES MAGISTRATE JUDGE

## Annex

## Relevant Provisions of Germany's Criminal Code

**Section 25: Principals**

1. Any person who commits the offense himself or through another shall be liable as a principal.

2. If more than one person commit the offense jointly, each shall be liable as a principal (joint principals).

**Section 212: Manslaughter**

1. Whosoever kills a person without being a murderer shall be convicted as a manslaughterer and be liable to imprisonment of not less than five years.

2. In especially serious cases the penalty shall be imprisonment for life.